IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS

| | |
|---|---|
| RENEE J., AND CORNELIUS J. AS PARENTS/GUARDIANS/NEXT FRIENDS OF C.J., A MINOR INDIVIDUAL WITH A DISABILITY<br>*Plaintiffs*,<br><br>V.<br><br>HOUSTON INDEPENDENT SCHOOL DISTRICT<br>*Defendants*. | CIVIL ACTION NO. _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

Come now, Renee D. and Cornelius J., as parents/guardians/next friends of C.J., ("Plaintiff Parents") a minor student with a disability ("Plaintiff C.J."), collectively termed Plaintiffs herein, and bring this *Plaintiffs' Complaint* against Houston Independent School District (hereinafter, "Defendant HISD") as follows:

### 1.

### JURISDICTION AND VENUE

1.1. This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 et. seq. (2004), 34 C.F.R. Ch. 300 and Texas special education law at 19 Tex. Admin. Code Chapter 89. This Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §1331 and 20 U.S.C. §1400 et. seq. and specifically pursuant to 20 U.S.C. §1415(i)(2) and (i)(3)(A), as Plaintiffs are aggrieved by the findings and decision of an administrative hearing officer in a hearing conducted pursuant to the IDEA.

1.2   Venue in this Court is proper under 28 U.S.C. §1391(b).

1

2.

## THE PARTIES

2.1   Plaintiff C.J. is, and at all times material to this action, a minor student who resides in and has resided within the HISD.[1] Renee J., is his mother. Cornelius J. is his father. The student's initials are used in compliance with General Order No. 2004-11 of the United States District Court, Southern District of Texas to protect the minor's privacy and Federal Rule of Civil Procedure Rule 5. The full identity of the Plaintiffs is known to Defendant HISD, but can be fully revealed to the Court at a later date, if necessary.

2.2   Defendant HISD is a public school district in the State of Texas, is the recipient of federal funding through the State of Texas pursuant to the IDEA, and is obligated to fully comply with the IDEA, all of its related federal regulations and Chapter 89, the Texas special education rules.

3.

## NATURE OF THE ACTION AND RELIEF SOUGHT

3.1   This is an action under the IDEA appealing the decision of a Special Education Hearing Officer appointed by the Commissioner of Education of the State of Texas to consider the administrative due process hearing request filed against Defendant HISD on behalf of Plaintiff C.J., a student with a disability within the meaning of the IDEA. The TEA assigned Hearing Officer Lucius Bunton to the case, which was designated as *C.J., B/N/F R.J. vs. Houston Independent School District,* TEA Docket No. 111-SE-1215. Plaintiff C.J. was the Petitioner in the administrative proceeding. Defendant HISD was the Respondent. After an evidentiary hearing, the hearing officer issued a decision on August 15, 2016. The hearing officer denied

---

[1] Plaintiff C.J. will be moving with his mother in the near future to another district due to a family need and in an effort to obtain the free appropriate public education which Defendant HISD has denied him. However, his father remains a resident of the Defendant HISD.

Petitioner C.J. all relief. See Decision of Hearing Officer, attached as Exhibit "A." References to the hearing officer's decision are designated as "HO Dec. at __." The hearing officer's decision is factually incorrect and erroneous as a matter of law. The decision is not based upon a fair and knowledgeable review of the evidence presented in the hearing. As such, Plaintiff C.J. is entitled to an Order from this Court reversing and vacating the hearing officer's decision.

4.

## FACTUAL BACKGROUND

4.1   Plaintiff C.J. is a now 10th grader with autism, an emotional disturbance, an intellectual disability, an other health impairment ("ADHD") and a severe vision impairment in his right eye. Plaintiff C.J. describes his vision impairment as "darkness." It is a serious vision loss even after correction. Plaintiff C.J., most likely due to his autism, resists wearing his glasses. Plaintiff C.J. eats toilet paper, rocks, bites and chews his finger to injury, jumps in the class, has climbed into cabinets, crawled on the floor, and run around the classroom. He has extremely low academic skills, is anxious and his language skills are also somewhat limited. However, Plaintiff C.J. is capable of reaching a fourth-grade functional level of skills if he was provided a systematic approach to learning, his vision issues were addressed and he felt he was in a safe environment.

4.2   There is no question Plaintiff C.J. is qualified for special education and related services under the IDEA and should have an Individual Education Program ("IEP") as mandated at 20 U.S.C. §1414(d). The IEP is the mechanism to provide Plaintiff C.J. the free appropriate public education designed to meet his unique needs and to which he is entitled pursuant to the IDEA. In Texas, the IEP for a special education student is created through an admission, review and dismissal committee as mandated by 19 Tex. Admin. Code Chapter §89.1055 ("ARD"). The

IEP/ARD must be a statement of the child's needs, goals and objectives the child is expected to meet, measures of progress and special education and related services the child will receive. 20 U.S.C. §1414(d).

4.3     Defendant HISD never evaluated Plaintiff C.J. for his vision impairment until after the hearing was requested and has never conducted a functional vision evaluation.

4.4     Plaintiff C.J. requested this hearing on December 8, 2015. A three-day hearing was held May 31, 2016-June 2, 2016. HO Dec. at 1.  The Hearing Officer ruled for the Defendant HISD in a decision issued August 15, 2016. This appeal is timely filed less than ninety days after the Hearing Officer's decision has been issued.

4.5     Plaintiff C.J. alleged that he was denied a free appropriate public education during his eighth grade year from December 15, 2014 forward to the end of the 2014-2015 school year, his ninth grade year during the 2015-2016 school year and also sought appropriate services for his tenth grade year during the 2016-2017 school year.

**Eighth Grade (FM Black Middle School) (2014-2015 School Year)**

4.6     During his eighth grade year, Plaintiff C.J. was left completely without special education and related services from late January, 2015 through May, 2015. Plaintiff C.J. had a "meltdown" at home on January 21, 2015 because he was upset at how he was being treated at the FM Black Middle School. Plaintiff Renee J. wrote a letter on January 22, 2105 to the Defendant HISD, specifically, administrators at the FM Black Middle School, complaining about this and asking for assistance, including home services for Plaintiff C.J. Although the letter was received by Ms. Pompi-Rodriguez, senior special education manager, no ARDC team was ever convened to address Plaintiff C.J.'s concern about bullying. Instead, Ms. Pompi-Rodriguez merely directed campus and other staff to "develop a plan" for Plaintiff C.J.  No

4

Prior Written Notice was ever issued about the Defendant HISD's refusal to provide Plaintiff C.J. special education and related services through home instruction or at a neutral site given his fear of returning to FM Black Middle School.

4.7   Defendant HISD's homebound coordinator, Darlene Blasco, testified that Defendant HISD's homebound procedures prohibit any convening of an ARDC team unless the parent completes a homebound services packet. To convene such a meeting without the "homebound services packet" violates Defendant HISD's policies and procedures.

4.8   Plaintiff C.J. went without critically necessary special education and related services from January 2015 to May 2015. Although his parents attempted to bring him to school, and to satisfy Defendant HISD's "homebound" rules for a physician letter by offering a number of letters, Defendant HISD provided no meaningful services to Plaintiff C.J. in his home contrary to the IDEA. As Plaintiff C.J. was fearful to return to a school campus, he thus went without any special education and related services for five months.

4.9   From the end of January, 2015 until the end of April, 2015, Defendant HISD never issued a Prior Written Notice about Plaintiff C.J. not qualifying for its typical "homebound services" nor its refusal to provide services to Plaintiff C.J. at his home.

4.10   Plaintiff C.J. attended outpatient programming at Cypress Creek Hospital from April 16-April 22, 2015 and then intensive half-day outpatient program from April 22, 2015 to May 17, 2015. Cypress Creek staff substantiated Plaintiff C.J.'s fear about returning to school due to bullying.

4.11   On April 30, 3015, over three months after his parents reported his need for assistance, Defendant HISD convened an ARDC and refused him general education homebound services. Ana Esparza, a regional coordinator/parent advocate with Partners Resource Network attended

the meeting. She testified the parents asked for services at home, and that the Defendant HISD did not address the bullying allegations at the meeting.

4.12 Plaintiff C.J. tried to return to school in May, 2015 but could not do so; he was fearful.

4.13 On June 11, 2015, the ARDC met and concluded Plaintiff C.J. did not have a need for Extended School Year ("ESY") services for summer 2015. One week later, Plaintiff Parents were informed by email that Plaintiff C.J. had been approved for ESY starting on June 11, 2015 at the M.C. Williams campus. Plaintiff Cornelius J. went to M.C. Williams to meet the teacher but the staff did not seem to be prepared for Plaintiff C.J.

4.14. On August 12, 2015, nearly seven months after the allegation of bullying, and without any ARDC meeting where the bullying was discussed, Defendant HISD issued a letter to the Plaintiff Parents in which it summarily denied the bullying had occurred.

4.15 During the April 2015 meeting, Defendant HISD expressly admitted that Plaintiff C.J.'s progress reports had not been updated since the 2012-2013 school year. Administrator Pompi-Rodriguez told staff to remedy this problem with updated present levels of performance and baselines.

4.16 Defendant HISD failed to issue statutorily compliant Prior Written Notices throughout the timeframe of January 2015 through the summer of 2015.

4.17 Defendant HISD failed to provide Plaintiff C.J. with an appropriate Autism Supplement which is a required part of an IEP for any special education student with autism in the State of Texas.

**Ninth Grade (Booker T. Washington High School) (2015-2016 School Year).**

4.18 On August 21, 2015, Defendant HISD held an ARDC for Plaintiff C.J. In an August 21, 2015 ARDC Report, Defendant HISD conceded Plaintiff C.J. had been out of school, stating:

> Due to C.J. missing approximately 5 months of school in the Spring of 2015, C.J. will be offered 2 hours per week of compensatory time totaling 20 weeks beginning 2015-2016 school year.

4.19   At hearing, the Plaintiff Parents testified they did not agree to this amount.

4.20   The August 21, 2015 ARDC Report contains baselines of Plaintiff C.J.'s skills dated August 24, 2015. Each of the baselines suggests that Plaintiff C.J.'s skills were at "10%." At hearing, Defendant HISD employees admitted the baselines were contrived.

4.21   During the 2015-2016 school year, Defendant HISD's teachers used the contrived baselines. On September 18, 2015, while in special education class with Ms. Goffney, Plaintiff C.J. witnessed a fight in his special education classroom and became upset, and again fearful of school. He returned to Cypress Creek for partial hospitalization in October of 2015. After the holidays, Plaintiff C.J. was moved to Ms. Payne's special education class. The special education teachers were not clear on what baselines were in place or to be relied upon and not consistent on how any progress was to be measured.

4.22   Teachers were uncertain what IEP was even in place for Plaintiff C.J. at various times during the 2015-2016 school year.

4.23   There was no objective and fair measure of Plaintiff C.J.'s purported progress on his IEP goals during the 2015-2016 school year.

4.24   During the hearing, Defendant HISD presented a "chart" created by witness Gomez who created it only for litigation, and which purported to show Plaintiff C.J.'s progress. D. Ex. 37. However, at hearing, no witness could successfully explain how any of the percentages in D. Ex. 37 were actually derived.

4.25   Defendant HISD failed to issue statutorily compliant Prior Written Notices throughout the 2015-2016 school year.

4.26   Throughout the 2015-2016 school year, the Defendant HISD failed to fully evaluate Plaintiff C.J.'s vision impairment. Parents told the Defendant HISD that "he is almost blind in his right eye." Although five different witnesses testified to the necessity of Plaintiff C.J. being taught to wear his glasses, Defendant HISD never developed any program to help Plaintiff C.J. wear his glasses which is critical to preserving sight in his good eye and preventing injury to both eyes. No functional vision evaluation was done during this period of time.

4.27   None of the IEPs for Plaintiff C.J. during the 2015-2016 school year contains an appropriate Autism Supplement, which is a required part of any IEP for a child with autism in the State of Texas.

4.28   Defendant HISD did not conduct any transition assessment of Plaintiff C.J.

4.29   Throughout the 2015-2016 school year, the only transition goal for Plaintiff C.J. was to research the area of law enforcement and report three careers of interest. The goal is inappropriate and Plaintiff C.J. made no progress on it. The goal has been in place for several years.

4.30   Defendant HISD failed to provide Plaintiff C.J. with appropriate and sufficient social skills training for a child with autism. Social skills are important and must be provided by a district to a child with autism.

4.31   Defendant HISD failed to provide Plaintiff C.J. with Applied Behavior Analysis ("ABA") services to address behavioral needs. Plaintiff C.J. eats toilet paper, rocks, bites and chews his finger, jumps in the classroom, has climbed into cabinets, crawls on the floor, runs around the classroom, and had become involved in a couple of altercations which were viewed by Plaintiff C.J. as bullying. Defendant HISD did not offer Plaintiff C.J. any behavioral services until October 29, 2015 when it began to offer him generic counseling help 30 minutes once

every three weeks. Plaintiff C.J.'s teacher did not even know what ABA services are. ABA services are an appropriate program of services for a child with autism to address behavioral and social needs.

4.32   Defendant HISD staff testified that the entire district lacks even one certified Board Certified Behavior Analyst ("BCBA"). A BCBA is a professional trained to provide ABA services to children with autism.

4.33   Defendant HISD failed to provide Plaintiff C.J. with Extended School Year ("ESY") services for summer 2016 until after the due process hearing concluded. Defendant HISD has an illegal ESY policy. The policy provides that the ARDC meets to discuss ESY, but a separate administrator (who does not attend the meeting) must "grant" approval for ESY services.

4.34 Defendant HISD has never provided Plaintiff C.J. with any special education or related services assistance concerning his serious vision loss, including conducting a functional vision evaluation or the services of a teacher of the Visually Impaired.

**Tenth Grade (Booker T. Washington High School) 2016-2017**

4.35   Plaintiff C.J. began school this year at Booker T. Washington High School. His program is apparently the October 29, 2015 IEP from last year. This program continues to deny Plaintiff C.J. with a free appropriate public education.

5.

**THE HEARING OFFICER'S DECISION**

5.1   After a three-day hearing encompassing a transcript of 855 pages, multiple exhibits and the testimony of twenty-one witnesses, the Hearing Officer issued a double-spaced scant 8 page decision. The decision includes 25 findings of fact, many of which are incorrect or partially incorrect. The decision includes just barely two pages of discussion, most of which is incorrect

or incorrectly applied to the facts of this case. The decision includes a little less than a page of conclusions of law, much of which is incorrect or incorrectly applied to the facts of this case. The Hearing Officer's decision does not meet the statutory and regulatory requirements for a special education decision required by 34 C.F.R. 20 U.S.C. §1415(f)(3)(A) and (E) and 34 C.F.R. §300.511(c) which mandate that a hearing officer must possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.

5.2     The Hearing Officer held in totality for the Defendant HISD completely contrary to both the documentary and testimonial evidence produced at the hearing and the law.

5.3     The Hearing Officer specifically concluded and admitted at Finding of Fact 22: "Some of the student's teachers were confused about the measure of the student's progress and could not discuss at the hearing all elements involved in developing the record of the progress. Some of the student's goals were not updated in two of the years of the student's IEPs. Some school personnel were not familiar with the term "applied behavioral analysis" and terms for behavior strategies which were utilized in the student's program." HO Dec. at 5.

5.4     The Hearing Officer held in totality for the Defendant HISD while admitting that: "The credible evidence adduced at the hearing demonstrated a number of problems with the district's implementation of the processes in providing the student with a free appropriate education." HO Dec. at 6.

5.5     The Hearing Officer held in totality for the Defendant HISD while concluding that: "District employees in some instances could not explain their management of special education procedures and strategies." HO Dec. at 6.

5.6     The Hearing Officer's decision at Finding of Fact No. 4 is incorrect because Defendant HISD did not offer Plaintiff C.J. IEPs that contained measurable goals and objectives. See, HO

Decision at Finding of Fact No. 4.

5.7     The Hearing Officer's decision at <u>Finding of Fact No. 6</u> is incorrect because it ignores the Hearing Officer's own pre-hearing order excluding Plaintiff C.J.'s expert, Dr. Peter Simione, from observing Plaintiff C.J. at school on the basis of a Defendant HISD policy which is either non-existent or illegal. Finding of Fact No. 6 also misconstrues Dr. Simione's lengthy report and testimony. See, HO Decision at Finding of Fact No. 6.

5.8     The Hearing Officer decision at <u>Finding of Fact No. 8</u> is incorrect, in part, because the Plaintiff Parents repeatedly sought special education and related services for Plaintiff C.J. during the January – May 2015 timeframe. Plaintiff C.J. was fearful to attend school. The Hearing Officer completely ignored Defendant HISD's responsibility to provide Plaintiff C.J. services in his home or other neutral setting given his fear of returning to school. See, HO Decision at Finding of Fact No. 8.

5.9     The Hearing Officer's decisions at <u>Finding of Fact No. 8 and 9</u> are incorrect in part. Both documentary evidence and testimonial evidence from Cypress Creek hospital staff and others substantiated Plaintiff C.J.'s fear of returning to school due to bullying, and that he had made suicidal comments. The Plaintiff Parents made repeated requests for help.  The Hearing Officer ignored Defendant HISD's failure to provide Plaintiff C.J. appropriate services in his home or other neutral setting given his fear of returning to school at FM Black. See, HO Decision at Finding of Fact No. 8 and 9.

5.10    The Hearing Officer's decision at <u>Finding of Fact No. 10</u> is incorrect because Defendant HISD failed to timely convene an ARDC to assist Plaintiff C.J. Defendant HISD staff testified that this was the result of Defendant HISD's own policy which precluded the holding of an ARDC meeting until <u>after</u> parents complied with Defendant HISD's "homebound policy"

procedures. The IDEA does not require the parents to comply with such policies in order to access special education and related services in the home setting for their student, which is an IEP/ARD team meeting decision. 34 C.F.R. §300.115; 20 U.S.C. §1412(a)(5). See, HO Decision at Finding of Fact No. 10.

5.11 The Hearing Officer's decision at Finding of Fact No. 11 is partially incorrect as the Hearing Officer ignored testimony and documentary evidence at hearing showed that Plaintiff C.J. did not receive more than one to two hours of instruction in the home during the five months he was without programming. The staff member assigned testified to very limited visits to the home. See, HO Decision at Finding of Fact No. 11.

5.12 The Hearing Officer's decision at Finding of Fact No. 13 correctly states the months when IEP meetings were held but is misleading and incorrect concerning the actual topics discussed and resolved and the provision of services to Plaintiff C.J. See, HO Decision at Finding of Fact No. 13.

5.13 The Hearing Officer's decision at Finding of Fact No. 14 is incorrect that ESY was procedurally and substantively correctly proposed for summer 2015. Plaintiff Parents received an email on June 18, 2015, after ESY services had started a week earlier. Plaintiff Parents object to Defendant HISD's illegal ESY policy that seriously infringed on parental involvement in designing an ESY program, ignores the lack of an appropriately designed IEP for ESY 2015, and incorrectly blames the parents for Plaintiff C.J.'s failure to receive ESY during summer 2015. See, HO Decision at Finding of Fact No. 14.

5.14 The Hearing Officer's decision at Finding of Fact No. 15 is correct that the Defendant HISD offered just 40 hours of compensatory education for Plaintiff C.J.'s loss of five months of schooling during eighth grade but incorrect that the Plaintiff Parents were in agreement with the

amount. The Hearing Officer also ignores the failure of the Defendant HISD to issue a Prior Written Notice about compensatory education. See, HO Decision at Finding of Fact No. 15.

5.15 The Hearing Officer's decision at <u>Finding of Fact No. 18</u> is incorrect in describing Plaintiff C.J.'s severe vision loss in his right eye even after correction. It is false that the Plaintiff C.J. attended school without glasses. Glasses were consistently provided and at the school but teachers did not assist or help Plaintiff C.J., a child with autism, an emotional disturbance disorder, an other health impairment and a mild intellectual disability to wear them. See, HO Decision at Finding of Fact No. 18.

5.16 The Hearing Officer's decision at <u>Finding of Fact No. 19</u> that Plaintiff C.J.'s IEPs have been individualized is incorrect. The IEPs did not: 1) address his experience of bullying or perception of being bullied in a timely manner; 2) address his serious vision loss; 3) provide a meaningful Autism Supplement; 4) provide him with meaningful benefit academically; 5) address C.J.'s behavioral needs in a timely and consistent manner; and 6) were essentially inconsistent with the IDEA and state law. See, HO Decision at Finding of Fact No. 19.

5.17 The Hearing Officer's decision at <u>Finding of Fact No. 20</u> is incorrect in part. Defendant HISD staff testified that progress reports were not provided at the meetings, that Respondent's Exhibit 37 and Exhibit 53 were not reviewed at the meetings, that goals and objectives had not been reported on for two years from 2012-2013 through 2014, and that they essentially "made up" baselines starting in August 2014 which were then relied upon during the 2015-2016 school year. See, HO Decision at Finding of Fact No. 20.

5.18 The Hearing Officer's decision at <u>Finding of Fact No. 21.</u> is incorrect because both Respondent's Exhibit 37 and Respondent's Exhibit 53 were created only for litigation and should not have been admitted. The weight of the evidence at hearing was that Plaintiff C.J. did

not make progress on his IEP goals and academic/nonacademic skills. See, HO Decision at Finding of Fact No. 21.

5.19 The Hearing Officer's decision at <u>Finding of Fact No. 23</u> is incorrect in part. Defendant HISD staff openly admitted that the goals were not updated for two years, and that they "made up" the baseline data in August 2014. The FIE completed in September and October 2015 did not include a transition assessment, a meaningful and accurate vision assessment or a functional vision evaluation, and accurate measure of Plaintiff C.J.'s behaviors. See, HO Decision at Finding of Fact No. 23.

5.20 The Hearing Officer's decision at <u>Finding of Fact No. 25</u> ignores the Defendant HISD's responsibility to issue a Prior Written Notice as to the district's refusal to provide an Independent Educational Evaluation. See, HO Decision at Finding of Fact No. 25.

5.21 The Hearing Officer's decision admits serious procedural and substantive flaws in the Defendant HISD's provision of services to Plaintiff C.J. that seriously infringed upon parental participation, impeded and denied Plaintiff C.J. a free appropriate public education and incorrectly excuses the failures because "the district has tried." See, HO Decision at pg. 6.

5.22 The Hearing Officer's decision incorrectly blames the minor disabled Plaintiff C.J. for his inability to go to school. See, HO Decision at pg. 6. This is incorrect as a matter of law. The IDEA is about what a school district must do, not about what a minor disabled child is able to do.

5.23 The Hearing Officer's decision incorrectly interpreted and applied the burden of proof. See, HO Decision at pg. 6-7.

5.24 The Hearing Officer's failure to recognize that a complete cessation of special education and related services to this minor multiply-disabled Plaintiff for five months during a time when

14

he was afraid to go to school was a denial of a free appropriate public education is an egregious error by the Hearing Officer who incorrectly applied the law to the facts of this case. See, HO Decision at pg. 7.

5.25 The Hearing Officer's decision incorrectly applies the *Cypress-Fairbanks ISD v. Michael F.*, 118 F.3d 245 (5th Cir. 1997) standard to the facts and evidence adduced at hearing in this case. See, HO Decision at pg. 7.

5.26 The Hearing Officer's complete ignoring of the Defendant HISD's failure to identify Plaintiff C.J.'s serious vision loss until after the hearing began is contrary to the standards set forth in the IDEA and case law and an egregious error by the Hearing Officer who incorrectly applied the law to the facts of this case. See, HO Decision at pg. 7.

5.27 The Hearing Officer's superficial quotation of the standards in the *Michael F.* case do not meet the standards required of a decision maker under the IDEA. See, HO Decision at pg. 6-8.

5.28 The Hearing Officer lacked the knowledge required by the IDEA to render a decision consistent with the requirements of the IDEA.

5.29 The Hearing Officer's prehearing ruling that precluded Plaintiff Parents' expert Dr. Simione from observing Plaintiff C.J. at school was erroneous both factually and legally.

5.30 The Hearing Officer's exclusion of transcripts of ARD meetings at the hearing was erroneous as a matter of law.

5.31 The Hearing Officer appears to apply an incorrect standard of evidence; rather than a preponderance of the evidence, the Hearing Officer appears to apply a "clear and convincing" standard in contravention of the IDEA.

5.32 The Hearing Officer's failure to apply correct standards of law makes a mockery of the

15

hearing process and deprived Plaintiff C.J. and Plaintiff Parents of their right to a fair special education due process hearing as required by the IDEA.

6.

### CLAIM FOR RELIEF- IDEA

6.1   The Hearing Officer employed an incorrect legal standard, and/or did not properly apply the law to the facts of this situation to find that the Defendant HISD provided Plaintiff C.J. with a free appropriate public education in the least restrictive environment and one that was designed to meet each of his unique needs (including experiencing or believing himself to be experiencing bullying) through an appropriately designed Individualized Education Program during eighth grade, ninth grade and tenth grade.

6.2   The Hearing Officer employed an incorrect legal standard, and/or did not properly apply the law to the facts of this situation by approving and condoning the Defendant HISD's failure to provide Plaintiff C.J. with any special education and related services for five months from January 2015 through May 2015, approving its illegal homebound policy and failed to award an appropriate amount of compensatory education for the child's failure to receive any educational services during the five months.

6.3   The Hearing Officer employed an incorrect legal standard and/or did not properly apply the law to the facts of the situation in finding that Defendant HISD provided Plaintiff C.J. with an Individual Education Program ("IEP") as defined by law, including accurate statements of present levels of performance, accurate baselines of skills on goals and objectives, accurate measurement of progress of those skills, and appropriate services. The Hearing Officer ignored Plaintiff C.J.'s needs for an appropriately created autism supplement, ABA services, and social skills services to address bullying or perceptions of bullying. The Hearing Officer ignored

Plaintiff C.J.'s transition needs, including the need for a transition assessment. The Hearing Officer ignored Plaintiff C.J.'s desperate need for assistance with his vision impairment, including being taught to wear his glasses. The Hearing Officer incorrectly ignored Plaintiff C.J.'s lack of progress on IEPs, including those with goals not updated for two years, and not properly implemented or measured, or goals that were inappropriate to meet his needs.

6.4     Hearing Officer employed an incorrect legal standard, and/or did not properly apply the law to the facts of the situation when he determined that Defendant HISD properly evaluated and served Plaintiff C.J. concerning his serious vision impairment and denied Plaintiff C.J. an Independent Educational Evaluation.

6.5     The Hearing Officer employed an incorrect legal standard and/or did not properly apply the law to the facts of the situation in precluding Plaintiff Parents' expert, Dr. Simione, from observing Plaintiff C.J. at school, apparently upholding Defendant HISD's illegal practice or policy regarding same.

6.6     The Hearing Officer employed an incorrect legal standard, and/or did not properly apply the law to the facts of this situation by determining that Defendant HISD complied with Prior Written Notice throughout eighth and ninth grades.

6.7     The Hearing Officer employed an incorrect legal standard, and/or did not properly apply the law to the facts of this situation by determining that Defendant HISD's Extended School Year policy is consistent with the IDEA, even though the final decision about ESY services is made by an administrator not present at any ARD/IEP meeting. The Hearing Officer also erred by blaming the Plaintiff Parents for Plaintiff C.J.'s lack of ESY services during summer 2015.

7.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court receive all of the records of the administrative proceedings as required by the IDEA, and incorporating all of the facts and circumstances set forth above, Plaintiffs request that the Court accept jurisdiction and enter judgment against Defendant HISD and grant the following relief:

(1) enter a judgment reversing and vacating the hearing officer's erroneous factual findings (except for those few instances where they are consistent with the evidence adduced at hearing) and conclusions of law, and based upon a preponderance of the evidence find that the HISD denied C.J. a free appropriate public education consistent with the IDEA and Chapter 89, including a denial of a due process hearing decision consistent with the IDEA, and award Plaintiff C.J. all relief requested below;

(2) alternatively, vacate the Hearing Officer's decision and remand this case to a knowledgeable hearing officer, who shall review the entire administrative record of the hearing, and hold an additional evidentiary due process hearing to accurately determine whether Plaintiff C.J. was and continues to be denied a free appropriate public education and to issue a revised decision accordingly within a timeframe not to exceed 75 calendar days from the original decision;

(3) order that the Defendant HISD be ordered to pay for an Independent Educational Evaluation, and develop an appropriate IEP for Plaintiff C.J. that is fully designed to meet his unique needs consistent with the report of Dr. Simione; or an order for a private school placement that will meet Plaintiff C.J.'s unique needs;

(4) order that the Defendant HISD be ordered to provide Plaintiff C.J. with compensatory education services equal to a total of full days of 6.5 hours per day for the timeframe of January 2015 through May 2015, and no less than six weeks at four days a week, four hours a day of services reflecting lost ESY services for summer 2015, and full days of 6.5 hours per day for the timeframe of the 2015-2016 school year, and the same for the 2016-2017 school year continuing and that the Plaintiff Parents may use such an award for private school placement;

(5) order that the Defendant HISD cease its illegal practice or policy (if one exists) to preclude parentally paid evaluators from observing at school;

(6) order that the Defendant HISD cease prohibiting provision of home instruction and the timely holding of IEP/ARD meetings because of its Homebound policy;

(7) order that the Defendant HISD ensure that it has on staff individuals with credentials as a BCBA to provide ABA services for Plaintiff C.J.;

(8) order that the Defendant HISD cease its practice of having an administrator "approve" an ESY program in contravention of the IEP/ARDC process;

(9) order that the Defendant HISD immediately commence a training program for its staff in requisite procedures, including Prior Written Notice;

(10)  award Plaintiffs reasonable attorneys' fees and related costs, incurred in the administrative proceedings;

(11)  award Plaintiffs reasonable additional attorney fees and costs incurred in pursuing the current action;

(12)  award Plaintiffs prejudgment and post-judgment interest on any and all awards of fees and permissible costs, and

(13)   such other and further relief to which Plaintiffs are entitled.

Respectfully submitted this September 20, 2016.

>Cuddy Law Firm, PLLC
>8723 Shoal Creek Blvd, Suite 100
>Suite 100, Austin, Texas, 78757
>Telephone: (512) 649-3191
>Fax: (512) 649-1217
>
>By: _____
>Sonja D. Kerr
>State Bar No. 24095771
>Southern District Bar No. 2952271
>Email: skerr@cuddylawfirm.com